FILED
United States Court of Appeals
Tenth Circuit

October 15, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GARY R. THOMPSON, JR.,

    Petitioner - Appellant,

v.

JASON BRYANT,

    Respondent - Appellee.

No. 18-6153
(D.C. No. 5:18-CV-00288-F)
(W.D. Okla.)

_____

**ORDER***
_____

Before **HOLMES**, **MORITZ**, and **EID**, Circuit Judges.
_____

Gary R. Thompson, Jr., is an Oklahoma state prisoner proceeding pro se. After a jury trial, he was convicted in 1994 of first degree murder in the shooting death of Alonzo Calloway. Thompson was sentenced to life imprisonment. Following an unsuccessful direct appeal, he filed a federal habeas application under 28 U.S.C. § 2254. The district court denied relief, and this court affirmed. *Thompson v. Ward*, 13 F. App'x 782, 784 (10th Cir. 2001).

Thompson filed a second § 2254 application in 2007, which the district court transferred to this court. In that case we denied his motion to remand and his request for

---

    * This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

authorization to file a second § 2254 application. *In re Thompson*, Nos. 07-6223 &
07-6279, slip op. at 6 (10th Cir. Dec. 3, 2007) (unpublished). Thompson also filed a
motion seeking relief under Fed. R. Civ. P. 60(b) in 2009, which the district court
construed, in part, as an unauthorized second or successive § 2254 application.
We denied a certificate of appealability (COA) in that case. *Thompson v. Workman*,
372 F. App'x 858, 862-63 (10th Cir. 2010).

In 2018, Thompson filed another § 2254 application. The district court construed
this latest filing as successive and unauthorized and dismissed it for lack of jurisdiction.
Thompson now seeks to appeal the district court's dismissal order. Alternatively, he
seeks this court's authorization to file a successive § 2254 habeas application.

We deny a COA and dismiss this appeal. We also deny Thompson's motion for
authorization.

## I.      Certificate of Appealability

Thompson must obtain a COA to pursue his appeal. *See Montez v. McKinna*,
208 F.3d 862, 866-67 (10th Cir. 2000) (holding state prisoner must obtain a COA to
appeal a final order in a habeas corpus proceeding); *cf. United States v. Harper*, 545 F.3d
1230, 1233 (10th Cir. 2008) (holding federal prisoner must obtain a COA to appeal a
district court's dismissal of an unauthorized second or successive motion under 28 U.S.C.
§ 2255 for lack of jurisdiction). Because the district court's ruling rested on procedural
grounds, Thompson must show *both* "that jurists of reason would find it debatable
whether the petition states a valid claim of the denial of a constitutional right and that
jurists of reason would find it debatable whether the district court was correct in its

2

procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). We liberally construe Thompson's pro se application for a COA. *See Hall v. Scott*, 292 F.3d 1264, 1266 (10th Cir. 2002).

As construed by the district court, Thompson's latest § 2254 application asserted the following claims:

> (1) the State failed to disclose that Dennis Day, a witness in Petitioner's criminal trial, had received favorable treatment on a criminal case in exchange for his testimony; (2) the trial court erred by permitting admission of accomplice testimony without corroboration; and[] (3) the State suppressed portions of the preliminary hearing transcript that included Mr. Day's testimony.

R. at 207. Because these claims attempted to assert or reassert federal bases for relief from Thompson's underlying conviction, the district court concluded that his latest § 2254 habeas application was successive and unauthorized and dismissed it for lack of jurisdiction. *See Spitznas v. Boone*, 464 F.3d 1213, 1215-16 (10th Cir. 2006); *In re Cline*, 531 F.3d 1249, 1252 (10th Cir. 2008).

Thompson does not dispute that he previously filed a § 2254 application. He instead asserts various reasons why his latest filing is nonetheless not successive under 28 U.S.C. § 2244(b)(2). All of these arguments lack merit.

Despite Thompson's apparent contention otherwise, his first habeas application was not dismissed without prejudice. *See, e.g., Slack*, 529 U.S. at 488 (holding that a § 2254 application, filed after dismissal of first application for failure to exhaust administrative remedies, was not a second or successive application). Nor was his first § 2254 application more appropriately characterized as a 28 U.S.C. § 2241 habeas

3

application.  *See Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 925 (10th Cir. 2008) (recognizing that a prisoner's first § 2254 application, filed when he was a pretrial detainee, was properly characterized as a § 2241 application).

In arguing that claims presented for the first time are not second or successive, Thompson misconstrues *Haro-Arteaga v. United States*, 199 F.3d 1195, 1197 (10th Cir. 1999) (per curiam), in which we held that a third motion filed under 28 U.S.C. § 2255 was not second or successive where "none of the earlier motions filed by [the prisoner] conceded any claim or were decided on the merits or after the district court engaged in substantive review."  Unlike in *Haro-Arteaga*, Thompson's first § 2254 application was decided on the merits.

Thompson correctly notes that a successive § 2254 application does not require this court's authorization if the claim asserted was not ripe at the time the prisoner filed his first application.  *See In re Weathersby*, 717 F.3d 1108, 1111 (10th Cir. 2013) (holding that a claim is not second or successive if the basis for the claim did not exist when prior proceedings under § 2255 were ongoing).  But *Weathersby* is distinguishable. Although Thompson asserts that the factual predicates of his claims are newly discovered by him, those facts existed at the time of his trial.  *See United States v. Williams*, 790 F.3d 1059, 1068 (10th Cir. 2015) (explaining that the exception to the bar on unauthorized successive § 2255 motions applies "where the factual basis for a claim does not yet exist—not where it has simply not yet been discovered—at the time of a defendant's first motion").  Moreover, Thompson confuses ripeness and exhaustion when

4

he argues that his latest § 2254 application is not successive because a state court only recently ruled on his claims.

Finally, we have rejected the proposition, which Thompson appears to advance, that claims asserting fraud on the court of conviction are exempt from the prior authorization requirement for successive habeas applications. *See United States v. Baker*, 718 F.3d 1204, 1206, 1208 (10th Cir. 2013) (holding that a successive § 2255 motion asserting fraud on the court of conviction, however styled, requires this court's prior authorization).

In sum, absent circumstances such as those asserted by Thompson, none of which apply here, the relevant questions are whether he filed a previous § 2254 habeas application (yes) and whether his current application asserts or reasserts a federal basis for relief from his underlying conviction (also yes). As such, Thompson is not entitled to a COA because reasonable jurists would not debate the district court's ruling that his latest filing was an unauthorized successive § 2254 habeas application subject to dismissal for lack of jurisdiction.

## II. <u>Motion for Authorization</u>

Alternatively, Thompson asks this court for authorization to file a successive § 2254 application, which he asserts is based on newly discovered evidence. We may authorize a new claim if

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and

5

> convincing evidence that, but for constitutional error, no reasonable
> factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B). Thompson must make a prima facie showing that he can satisfy these gate-keeping requirements. *See Case v. Hatch*, 731 F.3d 1015, 1028 (10th Cir. 2013). "If in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition, we shall grant the application." *Id.* (internal quotation marks omitted).

## A.

In his first proposed claim, Thompson contends that newly discovered evidence reveals that perjured testimony was presented at his jury trial by a corroborating witness and by the prosecutor. He asserts that he learned of this evidence through an evidentiary hearing in his second post-conviction proceeding in state court. This claim is based, in part, on evidence of a previously undisclosed deal between the prosecutor, Brad Miller, and Dennis Day, under which Day would receive favorable treatment in his own criminal case in exchange for testifying in Thompson's trial. Thompson has submitted copies of documents supporting his claim that Miller and Day had such a deal. But we have previously denied authorization to bring this claim. *See In re Thompson*, No. 18-6022, slip op. at 2 (10th Cir. Feb. 27, 2018) (unpublished). As we clearly explained in our prior order, "This type of impeachment evidence does not show by clear and convincing evidence that no reasonable factfinder would have found Mr. Thompson guilty of first degree murder." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992)).

6

To the extent that Thompson seeks authorization to bring a claim based on alleged perjured testimony unrelated to Miller's undisclosed deal with Day, he fails to make a prima facie showing that he can satisfy the gatekeeping requirements of § 2244(b)(2)(B). Thompson asserts that new evidence contradicts Day's trial testimony, specifically as to where Day was and what he could see at the time of Calloway's shooting. He argues that Day's perjured (and now recanted) testimony was critical to his conviction because Day was the only witness other than his co-defendant who identified Thompson as a shooter. But Thompson has not submitted with his motion for authorization the new evidence that he says supports this claim (presumably, Day's testimony at the state court evidentiary hearing). Instead, he asks for leave to supplement his motion for authorization with the relevant hearing testimony. In deciding his motion, however, this court may only consider the documents that he submitted and whether they support a prima facie case for authorization of a successive § 2254 application. *See Case*, 731 F.3d at 1028. And based on the evidence that Thompson did submit, it does not "appear[] reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition." *Id.* (internal quotation marks omitted).

Thompson filed with his motion for authorization a copy of a police report that recorded Day's statement, on the day of the shooting, that he did not see the shooter. Thompson admits that his trial counsel had access to this police report at the time of his trial, but he maintains that he recently discovered it. And he argues that his counsel was ineffective in failing to use this police report to cross-examine Day at the trial. But Thompson does not attempt to show that, with the exercise of due diligence, he could not

7

have previously discovered this police report, as required by § 2244(b)(2)(B)(i). And his brief shows that the police report would have been cumulative because there was other evidence at the trial regarding Day's initial statements that he did not witness the shooting. *See* Br. in Support of Mot. for Auth. at 13-14; *see also Case*, 731 F.3d at 1042 (noting that a suppressed witness statement "would have been cumulative to the evidence presented at trial, falling far short of the clear and convincing standard"). Thus, Thompson also fails to show that his new evidence (the police report) "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error [his counsel's ineffective assistance], no reasonable factfinder would have found [him] guilty of the underlying offense." § 2244(b)(2)(B)(ii).

Thompson also submitted with his motion for authorization an affidavit from Rickye Henderson, dated in March 2012, stating that he did not see who fired the shots that killed Calloway. Citing this affidavit, Thompson asserts that "Henderson['s] was the only testimony backing up Dennis Day, and he has recanted." Br. in Support of Mot. for Auth. at 12. But Thompson does not explain how Henderson's trial testimony "backed up" Day, or how Henderson's affidavit recants his trial testimony. Instead, according to Thompson's brief, the affidavit appears to be consistent with Henderson's testimony at the trial. *See id.* ("Rickye Henderson saw the back of two boys, but could not make [a]

positive I.D.").[1]  Thus, Thompson has not demonstrated that Henderson's affidavit "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  § 2244(b)(2)(B)(ii).  Nor has he shown that, with due diligence, he could not have previously discovered the facts in Henderson's affidavit.

**B.**

In his second proposed claim, Thompson asserts that he was denied access to the transcript from the preliminary hearing, which he maintains was suppressed by Miller, the prosecutor.[2]  He contends that certain witnesses' testimony at the preliminary hearing (specifically, Day's, Tonya Carter's, and Lois Jones's testimony) greatly contradicted their later trial testimony.  And due to Miller's suppression of the preliminary hearing transcript, defense counsel was not able to effectively cross-examine these witnesses.

In 2007, Thompson unsuccessfully sought authorization to bring the same (or a substantially similar) claim based upon the preliminary hearing transcript, which he asserted was newly discovered at that time.  In denying authorization, we noted that he had provided no evidentiary support for his claim that the transcript had been suppressed

---

[1] Thompson also submitted a police report detailing Henderson's statements to police at the scene of the crime.  It is unclear whether Thompson claims that this police report is newly discovered.  In any event, Henderson's affidavit also appears to be consistent with his statement to the police at the time of the shooting, as recorded in the police report, that he did not see the shooter.

[2] At times, Thompson says that the transcript is "missing."  He does not explain if this is a continuing circumstance or a new development, or whether it is a different circumstance than the alleged "suppression" of the transcript, and if so, when or how he became aware of this development.

by the state. *In re Thompson*, Nos. 07-6223 & 07-6279, slip op. at 5 (10th Cir. Dec. 3, 2007) (unpublished).

Thompson now contends that his claim is based on newly discovered evidence that was not available before the evidentiary hearing in his second post-conviction proceeding. But he failed to submit with his motion any new evidence that supports this claim. Thompson first cites opinions from disciplinary hearings involving Miller, and separately, Miller's wife, who is also a prosecutor. Although these cases did not involve any conduct by Miller (or his wife) in connection with Thompson's case, he asserts that the conduct for which the Millers were sanctioned was similar to what he alleges occurred with respect to Miller's undisclosed deal with Day. We have (now twice) denied Thompson authorization to bring a successive claim based on evidence of that undisclosed deal. Moreover, as Thompson seems to acknowledge, his evidence that Miller was disciplined in other cases offers nothing beyond speculation that Miller suppressed the preliminary hearing transcript in his case.

Thompson has also submitted his own affidavit, dated in 2015, in support of his claim regarding the witnesses' inconsistent testimony. Although he details the discrepancies, he does not contend that they are newly discovered. Rather, he states that defense counsel informed him, before his trial, that Day, Carter, and Jones were going to give trial testimony that conflicted with their testimony at the preliminary hearing. Nor does Thompson's affidavit provide any evidence, much less new evidence, to support his contention that Miller suppressed the preliminary hearing transcript. Thus, Thompson fails to make a prima facie showing, based on the documents submitted in support of his

10

motion for authorization, that he satisfies the stringent requirements for the filing of a successive § 2254 habeas application.

C.

In his third proposed claim, Thompson asserts that he has new evidence that both his trial and his appellate counsel provided ineffective assistance. This claim rehashes the same contentions he made in support of his first and second proposed claims. It is also based upon the same alleged discovery of new evidence during the evidentiary hearing in his second post-conviction proceeding. Therefore, as with his first two claims, Thompson fails to satisfy the stringent requirements for filing a successive § 2254 habeas application asserting claims of ineffective assistance of counsel.

## III.    Conclusion

We deny Thompson a COA and dismiss this appeal. We also deny Thompson authorization to file a successive § 2254 habeas application. This denial of authorization "shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E).

Thompson's application to proceed on appeal without prepayment of costs and fees is granted. The relevant statute, 28 U.S.C. § 1915(a)(1), does not permit litigants to avoid payment of filing and docketing fees, only prepayment of those fees. Though we have disposed of this matter on the merits, Thompson remains obligated to pay all filing

and docketing fees. He is directed to pay the fees in full to the Clerk of the District Court for the Western District of Oklahoma.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk